IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**TAMMY ELDRIDGE**                                                                     **PLAINTIFF**

v.                                                  No. 3:17-CV-00308-JTR

**NANCY A. BERRYHILL,**
**Deputy Commissioner for Operations,**
**performing the duties and functions**
**not reserved to the Commissioner**
**of Social Security Administration**                           **DEFENDANT**

## ORDER REMANDING TO THE COMMISSIONER

Tammy Eldridge ("Eldridge") applied for social security disability benefits with an alleged disability onset date of May 29, 2014. (R. at 65). After conducting an administrative hearing, the administrative law judge ("ALJ") denied her applications. (R. at 26). After the Appeals Council denied Eldridge's request for review (R. at 1), the ALJ's decision became final. Eldridge has requested judicial review.[1]

For the reasons stated below, the Court reverses and remands the Commissioner's decision.

**I.**     **The Commissioner's Decision**

The ALJ found that Eldridge had engaged in substantial gainful activity between April 2015 and September 2015 but that there was a continuous twelve-

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge.

month period during which Eldridge did not engage in substantial gainful activity. (R. at 16–17). The ALJ found that Eldridge had the severe impairments of degenerative joint disease of the right shoulder, degenerative joint disease of the left knee, post-traumatic stress disorder, and anxiety. (R. at 17). Based on those impairments, the ALJ determined that Eldridge had the residual functional capacity ("RFC") to lift/carry and push/pull ten pounds occasionally and less than ten pounds frequently[2]; stand and or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; only use her right upper extremity as an assistive device to her left upper extremity; occasionally use her right hand for gross manipulation and frequently for fine manipulation; understand, remember, and carry out simple, routine tasks and make decisions in simple work-related situations; respond appropriately to supervisors and coworkers with occasional incidental personal contact; have no contact with the general public; and respond appropriately to minor changes in the usual work routine. (R. at 19–20).

---

[2] In both his hypothetical question to the vocational expert and in his specific finding in his decision, the ALJ referred to the maximum weight lifted/carried or pushed/pulled as ten pounds. However, the ALJ also stated, in another part of his decision, that the maximum weight she could "lift/carried or pushed/pulled" was twenty pounds. (R. at 19, 23–24, 58–59). Because the ALJ based his decision on the vocational expert's answer to the hypothetical question and restated those original limitations in the body of the decision, the Court interprets the ALJ's reference to "twenty pounds" as a drafting error. In any event, however, it is not relevant to the ground upon which the Court has determined that the ALJ's decision must be reversed.

Based on the restrictions imposed by this RFC, the ALJ concluded that it precluded Eldridge from performing her past relevant work. (R. at 24). However, a vocational expert ("VE") testified that the RFC would allow Eldridge to perform other jobs available in the national economy, including work as a machine operator and flagger. (R. at 25). Accordingly, the ALJ held that Eldridge was not disabled. (R. at 25–26).

## II. Discussion

Eldridge argues that the ALJ failed to resolve a possible conflict between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT") and improperly discounted the opinions of her treating doctors. Because the Court concludes that the ALJ did not resolve the conflict between the VE's testimony and the DOT, it is not necessary to reach Eldridge's other point for reversal.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g).

The ALJ posed a hypothetical question to the VE in which Eldridge was limited to occasional handling or gross manipulation with her right arm. (R. at 59–60). In response to the hypothetical question, the VE identified the jobs of machine operator (DOT No. 690.685-014) and flagger (DOT No. 372.667-022). (R. at 60).

3

However, according to the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupatial Titles* ("SCO"), both of these jobs require frequent handling. Eldridge argues that this creates a conflict between the VE's testimony and the DOT requiring remand.

The Commissioner argues that there is no "apparent" conflict because the ALJ did not limit Eldridge's ability to handle with her left arm. Both Eldrdige and the Commissioner rely on *Kemp ex rel. Kemp v. Colvin*, F.3d 630 (8th Cir. 2014) to support their positions. However, the Commissioner misstates the Court's holding in *Kemp* to support the position that the VE's testimony in response to a hypothetical question alone is sufficient to overcome the conflict. In *Kemp*, the Court specifically noted that "SSR 00–4p uses other phrases to describe a conflict between VE evidence and the DOT/SCO: 'conflict,' 'any conflict,' 'apparent conflict,' 'apparent unresolved conflict.' There does not appear to be any difference in the meaning of these phrases, and we use the phrase 'possible conflict' to encompass them all." *Id.* at 633 n. 2. In short, the Court in *Kemp* did not restrict the conflicts that the ALJ must resolve as the Commissioner contends. Rather, the Court charged that "the ALJ has an affirmative responsibility to ask about 'any possible conflict.'" *Id.* at 633. Here, just as in *Kemp*, the ALJ and the VE failed to address and account for the conflict between the VE's testing and the DOT and then reconcile the differences. (R. at 58–63).

Finally, Ms. Eldridge testified that she is right-handed. (R. at 60). It stands to reason that a manipulative limitation in a claimant's dominant hand would be more restrictive than the same limitation in the non-dominant hand. In fact, during her testimony, the ALJ specifically asked if her right arm was dominant. (R. at 60). Where the DOT/SCO states that an occupation requires frequent handling and the ALJ's hypothetical question to the VE limits the claimant to occasional handling with the dominant arm, this creates an obvious conflict that requires an explanation from the VE.

## III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole does not contain ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's decision is therefore REVERSED and REMANDED to the Commissioner with instructions to further develop the record

as necessary and to reevaluate Eldridge's RFC and solicit VE testimony resolving any and all possible conflicts with the DOT and its companion volumes.

It is so ordered this 6th day of November, 2018.

                                                                *J. Thomas Ray*
                                      UNITED STATES MAGISTRATE JUDGE